PeaksoN, C. J.
 

 It was the intention of the parties to vest in Moore a fee simple estate. This is clear, from all the circumstances of the case. The warranty is to Moore and
 
 “
 
 his heh s.” The bond of Moore binds “ his heirs” for the performance of the trust, and, indeed, the purpose of the parties, and the trust, sot out in the deed, made it necessary to give to the trustee the legal estate in fee. So the omission of the word, “ heirs,” in limiting the legal estate, was the effect of accident, or occurred through the ignorance or mistake of the draftsman.
 

 Courts of equity do not assume jurisdiction to reform deeds, unless the transaction be based on a valuable or a meritorious consideration.
 

 William Hunt did not stand in a relation to the wife and children of his brother, which imposed on him either a natural or a moral obligation to make provision for them, consequently, the suggestion of a meritorious consideration is out of the question, and the case depends on the allegation of a valuable consideration.
 

 We are satisfied from the pleadings and proofs, in connection with the deeds exhibited, that the transaction was of this nature : William Hunt, a man of good estate, and without family, 1¡: n been induced to advance in aid of James Hunt, who was Ids brother, had a large family, and had become em
 
 *94
 
 barrassed and much reduced in his estate, the sum of one thousand dollars, and as a security therefor, had taken from him a conveyance of the land on which he lived, and the negro woman and her two children, who assisted his wife in domestic matters. Whereupon, it was concluded between them, that William, instead of holding the title as a security for his money, should convey it to their friend, Moore, who was to hold it as a security for the debt, and at the same time manage it in such a way as to furnish the wife and children of James a home and the means of subsistence. The liberality of William, did not extend so far as to make
 
 a gift oí
 
 the land and negroes to the wife and children of his brother, but only to-postpone the collection of the mone3r due to him, in order to let the wife and children have a comfortable support out of the profits of the property, retaining, however, his lien on the property as security for the payment of the amount of his debt, together with the interest thereon.
 

 Viewed in this light, the wife and children of James are not simply volunteers, nor is the transaction one of mere bounty on the part of William Hunt, but the securing of his debt of one thousand dollars with interest, formed a valuable consideration, and the unusual circumstance, that the trustee was required to execute a penal bond, binding himself and his heirs to perform the trust, and hold the property as a security for the debt and interest, shows, beyond question, that the parties did not treat the conveyance as voluntary, and without consideration.
 

 It follows that the plaintiffs are entitled, in equity, to have the deed reformed so as to vest the legal estate in the heirs of the trustee, but in urging their right to be relieved from the effects of a mistake, they are met by another maxim of equity, ic he who asks equity must do equity,” and inasmuch as William Hunt, for the purpose of saving a part of the property, was compelled to make a further advance of the sum of $356.45, it is right that this latter sum should be added to the original sum of $1000, and that the property should be held as a security for the whole sum with the interest thereon.
 
 *95
 
 This meets the equity of the case, for the additional outlay is embraced by the spirit of the agreement, and had a necessity for it been foreseen, the deed would, assuredly, have made provision for it.
 

 The time, at which the money and interest is to be paid, is not expressly fixed, either by the deed or the bond; it was evidently not the intention to require payment, so long as the proceeds of the property should be needed for the comfortable support of Mrs. Hunt, and we think, according to its proper construction, the deed gives to her the proceeds of the property during her life, and at her death, the money charged thereon, together with interest, is to be raised out of the property, and the residue is then to be conveyed to her children.
 

 Per CueiaM, Decree accordingly.